UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| HALEY MEASLES, | ) |
| | ) |
| Plaintiff, | ) Jury Demanded |
| | ) |
| v. | ) No. _____ |
| | ) |
| RESTAURANT GROWTH SERVICES, LLC, | ) |
| | ) |
| Defendant. | ) |

# COMPLAINT

Plaintiff sues Defendant and shows unto the Court as follows:

## I. JURISDICTION

1. Pursuant to 28 U.S.C. § 1331, the original jurisdiction of this Court is invoked by Plaintiff pursuant to 42 U.S.C. § 12117 to secure protection and redress for the deprivation of rights granted by the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq., prohibiting disability discrimination in employment; the Pregnancy Discrimination Act ("PDA"), 42 U.S.C. § 2000e(k), prohibiting discrimination in employment because of pregnancy, childbirth, or related medical conditions; and supplemental jurisdiction is invoked pursuant to 28 U.S.C. § 1367, to secure protection and redress for the deprivation of rights granted by the Tennessee Pregnant Workers Fairness Act ("TPWFA"), Tenn. Code Ann. § 50-10-101 et seq., requiring certain pregnancy-based accommodations in the workplace.

2. The actions giving rise to this Complaint occurred in Hamilton County, Tennessee, and venue is proper in this district pursuant to 28 U.S.C. § 1391.

## II. NATURE OF PROCEEDING

3. This is a proceeding for back pay damages, compensatory damages, punitive damages, prejudgment interest, attorney fees, and for such additional remedies as may be necessary to effectuate the purposes of the ADA, PDA, and TPWFA.

## III. THE PARTIES

4. Plaintiff is a resident of McMinn County, Tennessee.

5. Defendant Restaurant Growth Services, LLC is a Delaware limited liability company with its principal address as 3038 Sidco Drive, Nashville, Tennessee 37204. Upon information and belief, the single LLC member of Defendant is not a resident of the State of Tennessee.

6. Defendant owns and operates multiple O'Charley's Restaurant & Bar restaurants, including an O'Charley's restaurant at which Plaintiff worked located at 2340 Shallowford Village Drive in Chattanooga, Tennessee.

7. Defendant employs more than 15 employees and its operations are sufficient to classify it as an "employer" within the meaning of 42 U.S.C. § 12111(5)(a) (subjecting Defendant to the provisions of the ADA); 42 U.S.C. § 2000e(a) (subjecting Defendant to the provisions of the PDA and Title VII of the Civil Rights Act of 1964 as amended); and Tenn. Code Ann. §50-10-102(2) (subjecting Defendant to the provisions of the TPWFA).

## IV. FACTUAL BASIS OF PLAINTIFF'S CLAIMS

8. Plaintiff was employed by Defendant as the Service Manager at its O'Charley's restaurant located on Shallowford Village Drive in Chattanooga.

9. In mid-December 2022, Plaintiff advised the General Manager, Tracy Welch, of her pregnancy. Welch immediately asked probing questions about Plaintiff's previous pregnancies.

In response, Plaintiff felt compelled to disclose prior pregnancy-related complications such as gestational diabetes and post-partum depression.

10. In January and February of 2023, Plaintiff's primary obstetrician and high-risk obstetrician both confirmed that Plaintiff had gestational diabetes, which is a medical disorder whereby the endocrine system cannot make enough insulin during pregnancy.

11. Plaintiff's gestational diabetes caused her to experience increased fatigue, which substantially limited her ability to walk and stand, as well as an imbalance in blood pressure and sugar levels, which substantially limited her ability to eat, think, and concentrate.

12. In late January 2023, Plaintiff advised Welch that her obstetrician had recommended that she not work more than eight hours per shift because of her gestational diabetes. At the time, Plaintiff's work shifts averaged between nine and 11 hours, particularly when she was scheduled to close the restaurant.

13. Per Welch's request for medical documentation, Plaintiff provided on February 2, 2023, a medical note with the following restrictions: 30-minute lunch break for each eight-hour shift; 15 minute break every two hours; access to a chair to sit as needed; no bending or lifting over 20 pounds; no working more than 8 hours per shift; and no working more than 40 hours per week.

14. Between January 2023 and March 2023, Welch made numerous snide comments about Plaintiff's pregnancy. For example, Welch asked if Plaintiff was "the type of pregnant woman who cries a lot" and "was the type who breastfeeds." In making these comments, Welch stated in a sarcastic tone, "Just thinking if I have to accommodate you again when you come back from maternity leave." In early March, Welch stated to Plaintiff, "As a friend, you should probably

3

go ahead and get fixed so we won't have to go through this again. You should think about the kids that you've got now and how this will affect us next time."

15. While Welch claimed that she would accommodate Plaintiff's restrictions, the accommodations were short-lived. By early March, most restrictions were not being honored.

16. Welch frequently scheduled Plaintiff (not at Plaintiff's request) to work closing shifts, which forced Plaintiff to work longer than eight hours. While the restaurant officially closed at 9:00 PM on Sunday through Thursday and 10:00 PM on Friday and Saturday, closing duties occurred after the official closing time. Plaintiff's closing duties typically took two hours, and it was not uncommon for Plaintiff to finish her closing duties around midnight.

17. Plaintiff was not freely allowed to take breaks every two hours. When she requested breaks, Welch would make comments like, "Can't you wait?" or "Are you sure you need a break now?" or other comments insinuating that the restaurant was too busy for Plaintiff to take a break. On more than one occasion, Welch interrupted Plaintiff's break, requesting that Plaintiff attend to customer matters that could have easily been handled by other staff members, including Welch. On another occasion, when Plaintiff asked Welch for a break, Welch repeatedly announced that Welch should be the one taking a break, not Plaintiff.

18. Plaintiff complained to Welch on numerous occasions about her restrictions not being honored. On one occasion, Welch responded, "A manager just has to work longer shifts. That's what you signed up for."

19. Frequently Welch would ask employee Rachel Trotter how Plaintiff was doing working by herself. Trotter would always tell Welch that Plaintiff was doing a good job. It was clear to Trotter from these questions that Welch did not like Plaintiff working while pregnant.

4

20. In early March 2023, employee Nikki Rutherford overheard a telephone conversation between Welch and her supervisor, Micah Wingo. Welch, who was on speaker phone, was relaying to Wingo that Plaintiff had been complaining about her medical restrictions not being accommodated. Wingo replied, "I really don't care about Haley or her accommodations." At that point, Welch noticed that Rutherford was nearby and motioned Rutherford to leave her office. Welch later approached Rutherford to explain away Wingo's comment. During this awkward conversation, Welch commented that Plaintiff did have a lot of accommodation needs. The manner in which Welch made this comment indicated that Welch was frustrated about Plaintiff's accommodation requests.

21. Shortly thereafter, Welch informed Plaintiff that she simply could no longer make accommodations. Welch then suggested that Plaintiff take a short-term disability leave of absence. At the time, Plaintiff's due date was August 27th, and she planned to work through the end of July. Therefore, Plaintiff did not want to begin her pregnancy leave in March.

22. Plaintiff experienced increased stress and fatigue at work because of management's refusal to accommodate her pregnancy-related restrictions. Because of this, coupled with Welch's statement that no accommodations would be made and that disability leave should be the option moving forward, Plaintiff felt forced to obtain a new medical note. On March 6, 2023, Plaintiff submitted a second medical note stating that her last day of work would be March 13th "due to pregnancy related complications."

23. On March 14, 2023, Plaintiff begrudgingly submitted a request for short-term disability leave, which was eventually approved. While on short-term disability leave, Plaintiff only received 60% of her salary and was not eligible to receive bonuses.

5

24. Around Plaintiff's last day of work or shortly thereafter, Welch stated to employee Rachel Trotter words to the effect that "I'm glad that Haley is taking disability. I don't think she could handle working while pregnant any longer."

## V. PLAINTIFF'S CLAIMS

<u>Count I: ADA Failure to Accommodate</u>

25. At all times relevant herein, Plaintiff was a qualified individual with a disability within the meaning of the ADA. Plaintiff's gestational diabetes satisfies the requirements of the actual disability prong of the ADA's definition of "disability" set forth in 42 U.S.C. § 12102(1)(A). Gestational diabetes is a physical impairment that substantially limits normal functioning of the endocrine system. See EEOC Enforcement Guidance: Pregnancy Discrimination and Related Issues, No. 915-003, 2015 WL 4162723, at *20 (June 25, 2015) ("Impairments involving other major bodily functions can also result in pregnancy-related limitations. Some examples include … gestational diabetes (affecting endocrine function)."). Gestational diabetes also substantially limits Plaintiff's major life activities of standing, walking, eating, thinking, and concentrating.

26. Pleading in the alternative, Plaintiff's gestational diabetes satisfies the requirements of the record-of-disability prong of the ADA's definition of "disability" set forth in 42 U.S.C. § 12102(1)(B). Plaintiff verbally advised Defendant of her gestational diabetes and presented a medical note listing multiple work restrictions for which Plaintiff sought workplace accommodations, including breaks for sitting and eating, work hour limits, and lifting limits.

27. Plaintiff's workplace medical restrictions, which were causally related to her disability, constituted a request for reasonable accommodation under the ADA.

28. Defendant's initial response was to honor Plaintiff's restrictions for a short time. Defendant never challenged Plaintiff's restrictions on undue hardship grounds. Indeed, these restrictions did not prevent Plaintiff from performing the essential functions of her job.

29. By failing to continue honoring Plaintiff's restrictions, Defendant essentially denied Plaintiff's request for reasonable accommodation. Defendant's actions and inactions alleged herein violate the ADA, specifically 42 U.S.C. § 12112(b)(5).

Count II: ADA Retaliation

30. The ADA prohibits retaliation against any individual who opposes any act or practice that violates the ADA, including the ADA's reasonable accommodation provision. See 42 U.S.C. § 12203(a).

31. Plaintiff's multiple complaints to Defendant that her medical restrictions were not being honored constituted protected activity under the ADA.

32. Defendant's continued refusal to honor Plaintiff's medical restrictions and Defendant's insistence that Plaintiff take disability leave (non-voluntarily) constitute materially adverse employment actions.

33. Such materially adverse employment actions were taken by Defendant against Plaintiff because of her protected activity under the ADA.

Count III: PDA Pregnancy Discrimination

34. The PDA, 42 U.S.C. § 2000e(k), prohibits workplace discrimination because of pregnancy, childbirth, or related medical conditions.

35. By continually refusing to honor Plaintiff's pregnancy-related medical restrictions and effectively forcing Plaintiff to take disability leave, Defendant discriminated against Plaintiff because of her pregnancy or pregnancy-related medical conditions.

Count IV: TPWFA

36. The TPWFA prohibits an employer from failing to make reasonable accommodations for medical needs arising from pregnancy, childbirth, or related medical conditions of an employee, unless the employer demonstrates that the accommodation would impose an undue hardship on the operation of the business. See Tenn. Code Ann. § 50-10-103(b)(1).

37. Plaintiff requested Defendant to reasonably accommodate her pregnancy-related medical needs by providing frequent work breaks, the ability to sit as needed, restrictions on lifting, and restrictions on work hours, all in accordance with Tenn. Code Ann. §50-10-102(3).

38. Defendant was aware that Plaintiff's accommodation requests related to her pregnancy.

39. Defendant cannot demonstrate that the accommodations proposed by Plaintiff would impose an undue hardship on Defendant's business operations.

40. By repeatedly failing to honor Plaintiff's pregnancy-related restrictions, Defendant unlawfully denied Plaintiff's accommodations requests in violation of the TPWFA, Tenn. Code Ann. §50-10-103(b)(1).

41. By forcing Plaintiff to take disability leave rather than honoring her pregnancy-related restrictions, Defendant violated the TPWFA, which prohibits an employer from requiring an employee to take leave if another reasonable accommodation can be provided to allow the employee to continue working. See Tenn. Code Ann. §50-10-103(b)(2).

## VI. ADMINISTRATIVE EXHAUSTION

42. On May 17, 2023, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC), which was assigned Charge Number 494-2023-

02520. On November 14, 2023, the EEOC issued Plaintiff a Notice of Right to Sue. Plaintiff brings this action within 90 days of the Notice of Right to Sue.

## VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays as follows:

a. That the Court issue and serve process on Defendant and require Defendant to answer within the time prescribed by law;

b. That Plaintiff be awarded back pay damages and all lost benefits of employment;

c. That Plaintiff be awarded compensatory damages;

d. That Plaintiff be awarded punitive damages pursuant to the ADA and TPWFA;

e. That Plaintiff be awarded pre-judgment interest;

f. That Plaintiff be awarded attorney fees and costs, and such other and further relief as the Court deems proper; and

g. That a jury try all claims and issues triable by a jury.

Respectfully submitted,

**MIKEL & HAMILL PLLC**

By: *s/ Doug S. Hamill*
Doug S. Hamill, BPR No. 022825
Counsel for Plaintiff
620 Lindsay Street, Suite 200
Chattanooga, TN 37403
(423) 541-5400
dhamill@mhemploymentlaw.com